UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHAUNA LAMBERT,                                    Case No. 1:21-cv-188
          Plaintiff,                               Hopkins, J.
                                                   Litkovitz, M.J.
     vs.

CITY OF CINCINNATI, *et al.*,                      **ORDER AND REPORT**
          Defendants.                              **AND RECOMMENDATION**

Plaintiff Shauna Lambert, a Sergeant in the Cincinnati Police Department, initiated this employment discrimination action against the City of Cincinnati, former Cincinnati Mayor John Cranley, former Cincinnati City Manager Paula Boggs Muething, and former Cincinnati Chief of Police Eliot Isaac. This matter is before the Court on defendants' motion to dismiss (Doc. 14), plaintiff's response (Doc. 16), and defendants' reply memorandum (Doc. 21). In addition, plaintiff has moved for leave to file an amended complaint (Doc. 17), which defendants oppose (Doc. 20). On July 24, 2024, these motions were referred to the undersigned for initial consideration. (Docs. 23, 24).

**I.  Background**

The Cincinnati Police Department has employed plaintiff Shauna Lambert "for a number of years." (Doc. 1 at PAGEID 3). Lambert, a female, had obtained the rank of Sergeant by May 2019. She alleges that, beginning in May 2019, her supervisor, Lieutenant Deborah Bauer, treated her less favorably than her male counterparts. She alleges several specific instances of gender discrimination or retaliation.

First, plaintiff scheduled vacation from May 12, 2019 through May 25, 2019. When plaintiff requested "off day changes" for May 26, 2019 and May 27, 2019, Bauer denied her request. However, Bauer granted a male sergeant's off day change request for March 23, 2019

even though his vacation began March 24, 2019. (Doc. 1 at PAGEID 3-4). Plaintiff alleges that Bauer's stated reason for denying her off day change request—that Bauer did not want to leave a first shift supervisor to work by himself—was disingenuous because Bauer allowed two male sergeants to be off on March 23, 2019, leaving another sergeant to work alone on that date. (*Id.* at PAGEID 4).

Second, after plaintiff "called off sick from work with a cold" from May 7, 2019 through May 11, 2019 prior to beginning her two-week vacation on May 12, 2019, Bauer allegedly told others that plaintiff "was lying about being sick and was only trying to increase her vacation time." (*Id.*). Bauer informed plaintiff "if she took off more than three sick days, she would need to produce a doctor's note." (*Id.*). According to plaintiff, Bauer made no such rule for plaintiff's male counterparts.

Third, while plaintiff was on vacation in May 2019, Bauer changed plaintiff's "off day group" without notice and without speaking with plaintiff. (Doc. 1 at PAGEID 5). Although Bauer told her the change was made to rebalance off day groups, plaintiff was the only sergeant whose off day group was changed. Plaintiff allegedly provided Bauer with alternative ways to rebalance the off day groups, but Bauer rejected her suggestions.

Fourth, according to plaintiff, when male sergeants were scheduled to work alone, Bauer offered overtime to other sergeants willing to assist the sergeant working alone. (*Id.* at PAGEID 6). However, plaintiff worked shifts in July 2019 alone without efforts to secure assistance. In addition, Bauer offered overtime to male sergeants willing to assist, but "never offered overtime to plaintiff to report and assist other sergeants working alone." (*Id.*).

Fifth, on July 23 and 24, 2019, Bauer unilaterally changed plaintiff's start time from 5:00

a.m. to 6:00 a.m.  Plaintiff coordinated with second shift supervisors to accommodate scheduled appointments on those dates, and Bauer, noticing plaintiff's adaptations, permanently changed plaintiff's start time to 6:00 a.m.  (Doc. 1 at PAGEID 6).

Sixth, on August 14, 2019, plaintiff received a written reprimand for rule violations she supposedly committed on June 6, 7, and 8, 2019 by:  (1) not logging into a dispatch system for three details; and (2) not keeping her body worn camera ("BWC") in standby status for her entire 10-hour shift.  (*Id.* at PAGEID 7).  According to plaintiff, she provided Bauer with proof that she was logged into the dispatch system for all three shifts, but Bauer refused to eliminate the charged violation.  In addition, plaintiff alleges that a BWC will not stay charged all shift if left in continuous standby status.  Therefore, it is a common practice to turn off a BWC at times during a shift to preserve its battery.  Plaintiff alleges that the male sergeants also turned off their BWC to preserve battery life, but she was the only one Bauer reprimanded.  (*Id.*).

On October 10, 2019, Bauer and Captain Craig Gregoire ordered plaintiff to meet with them.  According to plaintiff, during the meeting, "Bauer continued to deflect or alter her reasoning behind the changes and decisions that only directly impacted" plaintiff.  (*Id.* at PAGEID 8).  Plaintiff alleges that she received a 60-day suspension at this time.  (*Id.* at PAGEID 2).

In her original complaint, plaintiff alleges two claims.  Count 1, labeled "Discrimination," alleges that plaintiff was discriminated against, harassed, and treated less favorably because she is a woman, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*  (Doc. 1 at PAGEID 8-9).  Count 2, labeled "Punitive Damages," alleges that defendants "engaged in a discriminatory practice or practices, ongoing

harassment, and retaliation with malice or with reckless indifference to plaintiff's federally protected rights." (*Id.* at PAGEID 9). Therefore, she is entitled to "the imposition of punitive damages under 42 U.S.C. §1981a and other applicable law." (*Id.*).

Defendants moved to dismiss plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) on four grounds: (1) plaintiff fails to allege facts necessary to establish a *prima facie* case of gender discrimination; (2) plaintiff's complaint is impermissibly vague and conclusory and does not sufficiently allege that plaintiff suffered a materially adverse employment action compared to similarly situated male employees; (3) plaintiff's complaint names as individual defendants the former Mayor, City Manager, and Cincinnati Police Chief but asserts no allegations against them; and (4) defendants are exempt from punitive damages under 42 U.S.C. § 1981a. (Doc. 14 at PAGEID 503). Plaintiff responded that: (1) she adequately alleged an unlawful discrimination claim, including tangible losses sufficient to constitute an adverse employment action; (2) the complaint adequately alleges a hostile work environment claim; (3) the complaint adequately alleges an equal protection claim for violation of her Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; and (4) punitive damages are permissible under § 1983. (Doc. 16).

 In addition to opposing defendants' motion to dismiss, plaintiff moved to file an amended complaint. (Doc. 17). Plaintiff states that the "purpose of this amendment is to withdraw certain parties from this matter, and simplify the claims, in an effort to reduce workload for the parties and the Court." (Doc. 17 at PAGEID 537). Defendants oppose plaintiff's motion to amend the complaint, accurately noting that plaintiff's proposed amended complaint does not withdraw any parties and simply seeks to add new claims not alleged in the

4

original complaint.  (Doc. 20 at PAGEID 563).

## II.  Standard of review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss, a complaint must comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.  A court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

### A.  Plaintiff's Motion to File an Amended Complaint is Granted.

Federal Rule of Civil Procedure 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Leave should be "freely give[n,]" Fed. R. Civ. P. 15(a)(2), absent "undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party."  *Knight Cap. Partners Corp. v. Henkel AG*

5

*& Co., KGaA*, 930 F.3d 775, 786 (6th Cir. 2019) (citing *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 805 (6th Cir. 2005)).

Defendants contend that plaintiff's motion to amend her complaint should be denied because: (1) her "stated purpose for amendment is refuted and belied by her proposed amendment;" and (2) her "motion is futile because her claims lack merit." (Doc. 20 at PAGEID 563). First, plaintiff moved to amend her complaint "to withdraw certain parties from this matter, and simplify the claims, in an effort to reduce workload for the parties and the Court." (Doc. 17 at PAGEID 537). The stated purpose for the amendment is blatantly false as the proposed amended complaint (Doc. 17-1) neither removes a party nor simplifies the claims. Instead, the amended complaint attempts to remedy defects by adding allegations and claims not included in the original complaint. However, as this is plaintiff's first attempt to amend, misstating its purpose is not sufficient to overcome Rule 15(a)(2)'s directive that leave to amend should be freely given.

Second, it is too early in the litigation process to determine if plaintiff's claims ultimately "lack merit." The futility of the claims must be evaluated on a claim by claim basis. Therefore, finding no reason to deny plaintiff's motion (Doc. 17), leave to file the amended complaint will be granted.

### B. Claims Against the Individual Defendants Should be Dismissed.

Plaintiff names as defendants in this action the former Cincinnati Mayor, former City Manager, and former Chief of Police (collectively "individual defendants"). In her amended complaint, plaintiff alleges that the individual defendants (whom she seeks to sue in their individual capacities) were forwarded plaintiff's complaints regarding her treatment but "refused

6

to stop the discrimination" and, therefore, "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officer." (Doc. 17-1 at PAGEID 549). Plaintiff alleges two claims against the individual defendants in her amended complaint: "Equal Protection Clause Discrimination" pursuant to 42 U.S.C. § 1983 and gender discrimination pursuant to Ohio Revised Code § 4112.02.

### 1. Equal Protection Claim

With regard to plaintiff's equal protection claim under § 1983, the Sixth Circuit has summarized the pleading requirements to withstand a Rule 12(b)(6) motion to dismiss as follows:

> "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). To the extent that a plaintiff seeks to hold defendants liable as supervisors in their individual capacities, he must show they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)). A plaintiff must set forth facts that allege "that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

*Palladeno v. Mohr*, No. 20-3587, 2021 WL 4145579, at *3 (6th Cir. Sept. 13, 2021). In her amended complaint, plaintiff fails to allege any facts indicating that the former Mayor, City Manager, or Police Chief encouraged or directly participated in any alleged discrimination. Although she parrots the applicable legal standard, she fails to allege facts from which the Court could infer that the individuals authorized, approved, knowingly acquiesced or otherwise participated in the offending conduct. Accordingly, plaintiff's § 1983 claim against the individual defendants should be dismissed pursuant to Rule 12(b)(6).

### 2. State Law Discrimination Claim, Ohio Revised Code § 4112.02(A)

Ohio Revised Code § 4112.02(A) makes it an unlawful discriminatory practice "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, . . . to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment." However, municipal employees in Ohio enjoy a presumption of individual immunity unless one of the following exceptions applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code . . . .

Ohio Rev. Code § 2744.03(A)(6). *See also Yankovitz v. Greater Cleveland Regional Transit Authority*, 222 N.E.3d 104, 117 (Ohio Ct. App. 2023) (quoting Ohio Rev. Code § 2744.03(A)(6)) and *Meyers v. City of Centerville*, 41 F.4th 746, 766 (6th Cir. 2022) ("Ohio law provides absolute immunity to employees of political subdivisions" unless a § 2744.03(A)(6) exception applies.). The Ohio Supreme Court specifically determined that Ohio Revised Code § 4112.02(A) "does not 'expressly impose' civil liability on political subdivision employees so as to trigger the immunity exception in [Ohio Rev. Code §] 2744.03(A)(6)(c)." *Yankovitz*, 222 N.E.3d at 118 (quoting *Hauser v. Dayton Police Dept.*, 17 N.E.3d 554, 559 at ¶ 15 (Ohio 2014)). *See also Rosecrans v. Village of Wellington*, No. 1:15-cv-128, 2016 WL 165450, at *4 (N.D. Ohio Jan. 14, 2016) (dismissing Ohio Rev. Code § 4112.02(A) age discrimination claim against the mayor of Wellington).

In this case, then, the former Cincinnati Mayor, City Manager, and Police Chief, as political subdivision employees, are immune from individual liability for plaintiff's §

4112.02(A)[1] claim unless their acts or omissions were "manifestly outside the scope" of their official responsibilities or were undertaken "with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Rev. Code § 2744.03(A)(6).  While a plaintiff need not "affirmatively demonstrate an exception to immunity" in her complaint to overcome a Rule 12(b)(6) motion, a court will grant such a motion where "the complaint is 'devoid of [allegations] tending to show that the [defendants] acted' in at least bad faith."  *Hensley v. West Chester Twnshp.*, No 1:21-cv-373, 2022 WL 4621432, at *5 (S.D. Ohio Sept. 30, 2022) (Barrett, J.) (quoting *Meyers*, 41 F.4th at 766).  Plaintiff makes no such allegations against the individual defendants in either her initial complaint or her amended complaint.  Accordingly, the state law discrimination claim against individual defendants Cranley, Boggs Muething, and Isaac should be dismissed pursuant to Rule 12(b)(6).

### C. Defendant City of Cincinnati's Motion to Dismiss Should be Granted in Part and Denied in Part.

Defendant City of Cincinnati contends that plaintiff's claims against it should be dismissed pursuant to Rule 12(b)(6) because:  (1) plaintiff failed to identify any similarly situated comparators outside the protected class; (2) plaintiff failed to adequately plead a hostile work environment claim; and (3) Title VII exempts government agencies from punitive damages.[2]

---

[1] The Court notes that individual liability can attach for municipal employees who violate Ohio Rev. Code § 4112.02(J) because it "specifically applies to a 'person,' making it unlawful for 'any person to aid abet, incite, compel or coerce the doing of any' discriminatory act.  That provision therefore expressly imposes liability upon an individual that would include an employee of a political subdivision."  *Yankovitz*, 222 N.E.3d at 118 (quoting *Johnson-Newberry v. Cuyahoga Cty. Child and Family Servs.*, 144 N.E.3d 1058, 1065 at ¶ 27 (Ohio Ct. App. 2019)).  *See also Evans v. Hillman Group, Inc.*, No. 1:20-cv-41, 2021 WL 1140100, at *5 (S.D. Ohio Mar. 25, 2021) (Barrett, J.) (denying individual defendant's motion to dismiss Ohio Rev. Code § 4112.02(J) claim where plaintiff alleged that she "aided, abetted, incited, coerced, and/or compelled" the discriminatory termination by participating in meetings, doing "all the talking" and announcing that plaintiff and the employer "were going their separate ways").  Plaintiff in this case makes no such allegations and limits her purported claim to § 4112.01(A) specifically. (Doc. 17-1 at PAGEID 551).

[2] Plaintiff's amended complaint seeks punitive damages against only the individual defendants.  (Doc. 17-1 at PAGEID 552).  Since the Court is recommending dismissal of all claims against the individual defendants, the Court

9

(Doc. 14 at PAGEID 512-20; Doc. 21 at PAGEID 568-73).  Plaintiff responds that she adequately pled Title VII claims for gender discrimination and hostile work environment and an equal protection claim under 42 U.S.C. § 1983.  (Doc. 16).

### 1.  Plaintiff's hostile work environment claim should be dismissed.

A Title VII plaintiff "does not have to allege specific facts establishing a *prima facie* case of discrimination in their complaint."  *Savel v. MetroHealth Sys.*, 96 F.4th 932, 943 (6th Cir. 2024) (noting that the rule from *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) that the *prima facie* case is "an evidentiary standard, not a pleading requirement" "survived the heightened pleading standard ushered in by *Twombly* and *Iqbal*").  *See also Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 842 (6th Cir. 2024).  However, a Title VII plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face," drawing all reasonable inferences in plaintiff's favor.  *Ogbonna-McGruder*, 91 F.4th at 839 (quoting *Iqbal*, 556 U.S. at 678).  Of course, "the presumption of truth is inapplicable to legal conclusions."  *Id.* (quoting *Fisher v. Perron*, 30 F.4th 289, 294 (6th Cir. 2022)).

As the Sixth Circuit explained earlier this year:

> [U]nder Title VII, a plaintiff may bring a claim alleging that either (1) an employer engaged in "discrete discriminatory acts" such as "termination, failure to promote, denial of transfer, or refusal to hire"; or (2) the employer's "repeated conduct" created a hostile work environment.  [*Nat'l R.R. Passenger Corp. v.*] *Morgan*, 536 U.S. [101,] 114-15, 122 S.Ct. 2061 [2002]; *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993-93 (6th Cir. 2009).  Because the two claims are "different in kind," we have consistently held that allegations of discrete acts may be alleged as separate claims, and as such "cannot properly be characterized as part of a continuing hostile work environment."  *Sasse v. U.S. Dep't of Labor*, 409 F.3d 773, 783 (6th Cir. 2005)[.]

---

need not address defendants' arguments related to punitive damages.  In addition, punitive damages are a remedy rather than an independent claim subject to a Rule 12(b)(6) motion.  *See Ross v. PennyMac Corp.*, No. 1:17-cv-636, 2018 WL 2215924, at *4 (S.D. Ohio May 15, 2018), *aff'd sub nom.*, *Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491 (6th Cir. 2019) (citing *Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1087 (S.D. Ohio 2013)).

*Ogbonna-McGruder*, 91 F.4th at 840. In *Ogbonna-McGruder*, the Court upheld the Rule 12(b)(6) dismissal of a professor's hostile work environment claim because her allegations (that she was denied the opportunity to draft a grant proposal and teach a summer course, received low evaluations, was replaced by person outside the protected class, and was reassigned to teach less desirable courses) represented "discrete acts that could perhaps support separate claims of discrimination or retaliation under Title VII." *Id.* Her remaining allegations, *i.e.*, that her supervisors instructed her to move to the basement, scolded her in front of another faculty member, denigrated her teaching abilities during a video call, and told her she was not qualified to teach the courses she had taught for 18 years, were deemed insufficient to support an inference that the harassment was "severe or pervasive" even though she alleged that those actions "unreasonably interfered with [her] work performance." *Id.* at 840-41.

In this case, plaintiff Lambert alleges that, although she had been employed by the City of Cincinnati for a number of years, her work environment changed beginning in May 2019. (Amended Complaint, Doc. 17-1 at ¶ 12). According to Lambert, Lt. Deborah Bauer denied her requested off day changes for May 26 and 27, 2019 so that she could extend her May 12 through 25, 2019 vacation, even though Bauer granted a male sergeant's off day request for March 23, 2019, the day before his scheduled vacation. (Doc. 17-1 at ¶¶ 14-18). When Lambert called off sick from work with a cold from May 7 through May 11, 2019 (the four days preceding her vacation), Bauer allegedly told two male sergeants that Lambert "was lying about being sick and was only trying to increase her vacation time." (Doc. 17-1 at ¶ 21-23). Bauer then made a rule that plaintiff must produce a doctor's note whenever plaintiff took more than three sick days, but she did not make the same rule for the four males under her direct command. (Doc. 17-1 at ¶¶

11

19-20).

While plaintiff was on her May 2019 vacation, Bauer changed plaintiff's "off day group" without discussing it with plaintiff. (Doc. 17-1 at ¶ 25). Bauer did not change any other sergeant's "off day group" even though plaintiff suggested other ways to rebalance the "off day groups." (Doc. 17-1 at ¶¶ 28-30). Plaintiff also alleges that she was denied overtime opportunities permitted to male sergeants "solely on the basis of sex" (*Id.* at ¶¶ 37-39); that Bauer unilaterally changed plaintiff's start time from 5:00 a.m. to 6:00 a.m. (*Id.* at ¶¶ 40-44); that Bauer enforced rules against plaintiff that she did not enforce against male sergeants which led to plaintiff receiving a 60-day suspension from being able to perform details, causing loss of significant overtime compensation (*Id.* at ¶¶ 45-52); and that Bauer made comments about plaintiff's written reprimand to other sergeants (*Id.* at ¶¶ 53-54). Plaintiff was on vacation from September 3 through October 4, 2019. (Doc. 1 at PAGEID 12). On October 10, 2019, Captain Craig Gregoire ordered Bauer and plaintiff to meet with him. (Doc. 17-1 at ¶ 55). Plaintiff does not allege any further discriminatory actions after that date.

First, plaintiff's allegations that she suffered disciplinary action that her male peers did not and that she was denied overtime opportunities on the basis of sex constitute "discrete acts" of sex discrimination for which plaintiff has alleged a direct discrimination claim under Title VII. *See Ogbonna-McGruder*, 91 F.4th at 840. However, to state a hostile work environment claim, a plaintiff must "sufficiently allege facts from which we may infer that the harassment she experienced was severe or pervasive." *Id.* "Courts consider the totality of circumstances in determining the severity and pervasiveness of alleged harassment, including "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating,

12

or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" *Id.* (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).  To be actionable, the harassment alleged "must be both objectively and subjectively severe and pervasive." *Id.* at 841 (quoting *Harris*, 510 U.S. at 21-22).  "Allegations of 'simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious)' do not suffice." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

As far as allegations that could constitute harassment to support her hostile work environment claim, plaintiff alleges that:  (1) Bauer allegedly told two male sergeants that Lambert "was lying about being sick and was only trying to increase her vacation time."  (Doc. 17-1 at ¶ 21-23); (2)  Bauer told only plaintiff that she must produce a doctor's note whenever she took more than three sick days (Doc. 17-1 at ¶¶ 19-20); (3) Bauer failed to take plaintiff's suggestions for rebalancing the off day groups (Doc. 17-1 at ¶¶ 28-30); (4) Bauer unilaterally changed plaintiff's start time from 5:00 a.m. to 6:00 a.m. (*Id.* at ¶¶ 40-44); and (5) Bauer commented about plaintiff's written reprimand to other sergeants (*Id.* at ¶¶ 53-54).  Taken as a whole, these allegations fail to constitute severe or pervasive harassment.  Bauer's actions were likely uncomfortable for plaintiff, but plaintiff does not allege any physically threatening or humiliating harassment or extremely serious incidents.  Nor does plaintiff allege that Bauer's actions unreasonably interfered with her work performance.  These allegations are more akin to ordinary workplace tribulations than objectively and subjectively severe and pervasive harassment.  Accordingly, plaintiff's Title VII hostile work environment claim should be dismissed.

### 2. Plaintiff sufficiently identified comparators and asserted a materially adverse employment action.

13

Defendants next contend that plaintiff's complaint should be dismissed because she failed to identify "any comparators outside the protected class who are similarly situated in all relevant aspects and treated more favorably."  (Doc. 14 at PAGEID 518; Doc. 21 at PAGEID 658). "[T]here is no categorical requirement that a plaintiff who seeks to support an inference of discrimination must identify similarly situated comparator employees by name in [her] complaint."  *Turner v. United Parcel Service, Inc.*, No. 3:19-cv-00476, 2019 WL 5190992, at *4 (M.D. Tenn. Oct. 15, 2019).  However, "a Title VII claim 'will typically require at least some degree of detail regarding any comparator employees on which a plaintiff relies, in order for the court to evaluate whether . . . an inference [of discrimination] can be drawn.'"  *Mitchell v. Fujitec America, Inc.*, 518 F. Supp. 3d 1073, 1101 (S.D. Ohio 2021) (quoting *Turner*, 2019 WL 5190992, at *4)).  *See also Savel*, 96 F.4th at 944 (District court should not prematurely apply *prima facie* case requirements to Title VII claimants as "[t]ime—and, crucially, discovery—will tell whether" plaintiffs meet that burden, but "at the pleading stage, it is too soon to consider that question.").  To survive a Rule 12(b)(6) motion, a Title VII plaintiff "only need[s] to plead sufficient facts from which [the court] could plausibly conclude that defendants" treated plaintiff differently because of her gender.  *Savel*, 96 F.4th at 943.  "If a reasonable court can draw the necessary inference [of discrimination] from the factual material stated in the complaint, the plausibility standard has been satisfied."  *Id.* (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)).

In this case, plaintiff's amended complaint identifies her comparators as: "other male sergeants" to whom Bauer offered overtime (Doc. 17-1 at ¶ 37); "three male sergeants, who were similarly situated to Plaintiff, but outside the protected class" (*Id.* at ¶ 39); and "all three of the

male sergeants under Bauer" (*Id.* at ¶ 51). At this early stage of litigation, those identifiers adequately describe plaintiff's comparators to state a direct discrimination claim against the City of Cincinnati.

In their reply memorandum, defendants essentially concede that plaintiff has alleged an adverse employment action. (Doc. 21 at PAGEID 568). However, as defendants raised the argument in their initial motion to dismiss, the Court notes that plaintiff's allegation that she lost significant overtime compensation due to the 60-day suspension adequately alleges an adverse employment action. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024) (Title VII claimant need only allege "some harm respecting an identifiable term or condition of employment" because of sex or other protected trait.).

### 3. Defendant City of Cincinnati has not yet addressed the remainder of plaintiff's amended complaint.

Defendant City of Cincinnati's response to plaintiff's amended complaint is not yet due. *See* Fed. R. Civ. P. 15(a)(3). Challenges to the remaining claims in plaintiff's amended complaint, if any, will be addressed in accordance with the Federal Rules of Civil Procedure.

### IT IS THEREFORE ORDERED THAT:

Plaintiff's motion for leave to file an amended complaint (Doc. 17) is **GRANTED.**

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion to dismiss (Doc. 14) be **GRANTED** as to claims against individual defendants John Cranley, Paula Boggs Muething, and Eliot Isaac.

2. Defendants' motion to dismiss (Doc. 14) be **GRANTED** as to plaintiff's hostile environment claim but **DENIED** as to plaintiff's other claims against defendant City

of Cincinnati.

Date:  8/22/2024

Karen L. Litkovitz
United States Magistrate Judge

16

# FUNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SHAUNA LAMBERT,                                    Case No. 1:21-cv-00188
     Plaintiff,                                   Hopkins, J.
                                                    Litkovitz, M.J.

     vs.

CITY OF CINCINNATI, *et al*.,
     Defendants.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being served with a copy thereof.  This period may be extended further by the Court on timely motion by either side for an extension of time.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

17