**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SHAUNA LAMBERT, | : | |
| *Plaintiff*, | : | Case No. 1:21-cv-188 |
| v. | : | Judge Jeffery P. Hopkins |
| CITY OF CINCINNATI, *et al.*, | : | |
| *Defendants*. | : | |

## OPINION AND ORDER

Shauna Lambert ("Plaintiff" or "Lambert") is a retired police sergeant from the City of Cincinnati. Lambert brings this case against the City of Cincinnati ("Defendant" or "the City") asserting claims for employment discrimination under Title VII and the Equal Protection Clause of the Fourteenth Amendment. The City is before the Court requesting summary judgment on Lambert's remaining claims. Because Lambert has not shown unlawful discrimination, the City is entitled to summary judgment. Accordingly, for the reasons explained below, the Court **GRANTS** the City's Motion for Summary Judgment (Doc. 41) and **DISMISSES** Lambert's Amended Complaint (Doc. 26) **WITH PREJUDICE**.

## I. BACKGROUND

The City of Cincinnati Police Department hired Plaintiff Shauna Lambert, who is female, as a police recruit on November 17, 1993. Doc. 41-1, ¶¶ 1, 4; Doc. 44-1, ¶¶ 1, 4. She received a promotion to police officer in 1994, and another, to police sergeant, in 1998. *Id.* Lambert remained a sergeant until she retired in June 2022. Doc. 41-1, ¶ 24; Doc. 44-1, ¶ 24. At all times relevant to her claims, Lambert was directly supervised by another female officer,

Lieutenant Deborah Bauer ("Lt. Bauer"). Doc. 41-1, ¶ 6; Doc. 44-1, ¶ 6. In addition to Lambert, Lt. Bauer also supervised five male sergeants: Sergeant Brad White ("Sgt. White"), Sergeant Matthew Hassert ("Sgt. Hassert"), Sergeant Jeff Scholl ("Sgt. Scholl"), Sergeant Richard Antwine ("Sgt. Antwine"), and Sergeant Jeff Dunaway ("Sgt. Dunaway"). Doc. 41-1, ¶ 7; Doc. 44-1, ¶ 7. According to Lambert, Lt. Bauer treated her less favorably than her male counterparts, and thus, engaged in unlawful employment discrimination based on Lambert's gender.

Lambert alleges that Lt. Bauer treated her differently in several ways, including: (1) requiring her to produce a doctor's note if she took more than three sick days while not subjecting male sergeants to the same requirement, (2) denying her earned vacation while granting the same to male sergeants, (3) changing her "off-day group" without notice rather than moving a junior male sergeant, (4) requiring her to work alone but not doing the same to male sergeants, (4) offering overtime to male sergeants, but not to her, (5) changing her start time without notice, and (6) issuing her written reprimands for rule violations while not enforcing the same violations against male sergeants. Doc. 44, PageID 1363–67.

According to Lambert, she began receiving adverse treatment from Bauer in May 2019. On May 7, 2019, Lambert called off sick for four days. Doc. 41-1, ¶ 10; Doc. 44-1, ¶ 10. Lt. Bauer suspected Lambert was lying about being sick to increase her vacation time, so Lt. Bauer informed Lambert that she would need to produce a doctor's note and call off directly to her if she was off sick for three or more days. *Id.* Though Lambert admits that Lt. Bauer was permitted to ask for a doctor's note in accordance with Cincinnati Police Policy and Procedure 19.105, Lambert asserts that Lt. Bauer did not enforce this rule uniformly for male sergeants. Doc. 41-1, ¶ 12; Doc. 44-1, ¶ 12; Doc. 44, PageID 1364. Soon after, Lambert

requested vacation time for May 26, 2019, and May 27, 2019, but Lt. Bauer denied Lambert's request because it would leave one of the male supervisors working alone. Lambert Dep., Doc. 33-1, 74:13; 74:21–22. Lambert contends that Lt. Bauer did not deny any similar requests for male sergeants. Around the same time, Lt. Bauer also changed Lambert's "off-day group" without notice, while keeping the "off-day group" assignments for three other male sergeants unchanged. *Id.* at 100:4–8.

Bauer's ill treatment towards Lambert persisted through the summer of 2019. In July 2019, Lambert worked on numerous occasions without any relief support. Lambert Dep., Doc. 33-1, 105:14–16. Though she concedes that it was inevitable that males and females would work alone at some point, Lambert asserts she worked alone more than anybody. *Id.* at 105:8–13. And according to Lambert, Lt. Bauer offered overtime to other sergeants whenever a male supervisor would be scheduled to work alone, but Lt. Bauer did not extend the same courtesy for Lambert. *Id.* at 110:2–9; 110:19–111:8; 120:1–8. That same month, Lt. Bauer changed Lambert's start time from 5:00 a.m. to 6:00 a.m. without notice. *Id.* at 120:20–121:3. Lambert acknowledges that male sergeants were subject to the same change; however, Lambert alleges she could not start before 6:00 a.m. without permission from Lt. Bauer, while the male sergeants could. *Id.* at 126:17–24.

In addition to these changes, Lambert contends that Lt. Bauer subjected her to discipline and poor performance evaluations. On August 14, 2019, Lambert received written reprimands and a detail suspension for three alleged rule violations: failing to log into a dispatch system for three details, failing to keep her Body Worn Camera ("BWC") in "standby" mode for an entire ten-hour shift, and taking a marked police vehicle to her residence on three occasions. Doc. 26, ¶¶ 45–48; Doc. 33-20, PageID 1009–11. This was

allegedly inconsistent with how Lt. Bauer treated male sergeants. For example, as to the BWC violation, Lambert contends that turning off a BWC to preserve battery life during an extended shift is common practice among all male sergeants under Lt. Bauer's supervision, yet she was the only sergeant investigated or disciplined for it. Doc. 26, ¶¶ 49–52; Lambert Dep., Doc. 33-1, 138:4–11. Beyond this, Lambert also challenges her 2019 performance evaluation, written by Lt. Bauer, which rated her below her male counterparts without any documented deficiencies, counseling records, or complaints supporting those ratings. Doc. 33-22, PageID 1063, 1071, 1080, 1086; Lambert Dep., Doc. 33-1, PageID 157:14–23.

Based on these events, Lambert filed her Complaint in this Court in March 2021, asserting claims against the City of Cincinnati, former Mayor John Cranley, former City Manager Paula Boggs Muething, and former Chief of Police Eliot Isaac. Compl., Doc. 1. In August 2024, the Court granted Lambert leave to amend her complaint, *see* Doc. 25, but dismissed Lambert's claims against John Cranley, Paula Boggs Muething, and Eliot Issac along with Lambert's hostile work environment claim. Doc. 28. Only the following claims against the City were permitted to proceed: (1) gender discrimination in violation of 42 U.S.C. § 2000e, (2) gender discrimination in violation of Ohio Rev. Code § 4112.02, and (3) discrimination under the Equal Protection Clause. The City now seeks to have the Court grant summary judgment on all claims. Doc. 41. Lambert filed a response to which the City has replied. Docs. 44, 47. The City's Motion is fully briefed and now ripe for determination.

## II. STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "'always bears the initial responsibility of informing the district

court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

The non-movant cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is *material* if its resolution affects the outcome of an action, and a dispute is *genuine* if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At bottom, the Court must determine whether there is some "sufficient disagreement" that requires submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

## III. LAW AND ANALYSIS

In her Amended Complaint, Lambert asserts gender discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Ohio Revised Code § 4112.02, along with an equal protection claim under 42 U.S.C. § 1983. Am. Compl., Doc. 26, ¶¶ 59–69. The City seeks summary judgment on each of Lambert's claims.

### A. Gender Discrimination

In Counts 1 and 2, Lambert asserts claims for gender discrimination. The elements and standards for proving gender discrimination claims under Title VII and Ohio law are the same, so the Court will consider these claims together. *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004); *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 510 (6th Cir. 2016).

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee with respect to her "compensation, terms, conditions, or privileges of employment," because of the employee's gender. 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of gender discrimination, a plaintiff must show: (1) she was qualified for her position; (2) she suffered an adverse employment action; (3) she was a member of a protected class; and (4) she was replaced by a person outside the protected class or treated differently than similarly situated male employees. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992); *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016).

To succeed on a gender-based discrimination claim, a plaintiff must present direct or indirect (*i.e.*, circumstantial) evidence that would allow a trier of fact to find that the defendant intentionally discriminated against the plaintiff because of her gender. *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007). "Direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated, at least in part, by unlawful discrimination." *Igwe v. Salvation Army*, 790 F. App'x 28, 34 (6th Cir. 2019) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)). Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc).

Lambert does not offer direct evidence of discrimination here,[1] so the Court will analyze her claims using the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That framework requires Lambert to first establish a prima facie case of discrimination. *Tepper*, 505 F.3d at 515. If she does so, the burden shifts to the City to articulate some legitimate, nondiscriminatory reason for its actions. *Id.* Then, if the City succeeds, the burden shifts back once more to Lambert to show that the City's proffered reasons were mere pretext for the discrimination. *Id.* at 515–16.

### 1. Prima Facie Case

The first and third elements of the prima facie case are not in dispute. The City concedes that Lambert, a female, is a member of a protected class and that she was qualified for her job as a police sergeant. Doc. 41, PageID 1342. The City, however, contends that Lambert cannot meet her burden as to the second and fourth elements. As the City sees it, as for the second prong, Lambert suffered no adverse employment action, and with regard to the fourth, she was treated no differently than similarly situated male employees. *Mitchell*, 964 F.2d at 582–83. Lambert disagrees.

#### a. *Adverse Action*

"An adverse action is one in which an employee suffers 'a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some other actual and unfavorable change in job status.'" *Milczak v. Gen.*

---

[1] Though in her Amended Complaint Lambert pursues gender discrimination claims based on direct evidence, Lambert has offered no direct evidence in support of her claim. Rather, all of the evidence offered by Lambert would require a fact finder to draw inferences to find that the City's alleged discriminatory actions were motivated by unlawful gender discrimination. *Johnson*, 319 F.3d at 865 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). The Court will therefore consider the evidence offered by Lambert through the lens of indirect evidence.

*Motors, LLC*, 102 F.4th 772, 786 (6th Cir. 2024) (quoting *Barrett v. Lucent Techs., Inc.*, 36 F. App'x 835, 841 (6th Cir. 2002)). Lambert alleges that she was subjected to several adverse employment actions, including receiving fewer overtime and vacation opportunities, less staffing support and being forced to work alone more often. According to Lambert, the City also targeted changes in her start time and "off-day group" without notice, applied the discipline rules differently towards her, and unfairly subjected her to disparate and unfavorable performance reviews. Doc. 44, PageID 1368–70.

Start with Lambert's denied vacation time. Lambert alleges that Lt. Bauer denied her request to take leave on May 26, 2019, and May 27, 2019. Lt. Bauer allegedly denied Lambert's voluntary off-day request because it would leave one of the male supervisors working alone. Lambert Dep., Doc. 33-1, 74:13; 74:21–22. This, however, was an isolated occurrence. Lt. Bauer approved Lambert's requests for time-off on other days. *Id.* at 75:1–76:12. And Lt. Bauer's reasoning for denying her request comport with Lambert's understanding of when a voluntary off-day would be approved or denied. Lambert testified that a voluntary off-day would be approved if it did not "affect the relief's manpower," but would be denied when it "does affect the manpower." *Id.* at 74:1–7. Under these facts, one discrete denial of a voluntary off-day request made in accord with Lambert's own understanding of the typical parameters of the approval/denial process does not amount to an adverse employment action for purposes of a prima facie case. *Shivers v. Charter Comm'n, Inc.*, No. 22-3574, 2023 WL 3244781, at *6 (6th Cir. May 4, 2023) ("Here, some denials of vacation requests according to [the employer's] policy, without more, is not an adverse employment decision."); *see also Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000) ("[I]t is inappropriate for the judiciary to substitute its judgment for that of management.").

Now consider Lambert's allegation regarding lack of overtime opportunities. The Sixth Circuit has observed that the "loss of opportunity to make overtime pay plainly impacts compensation, terms, and conditions of employment." *Milczak*, 102 F.4th at 787 (citing *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 919 (6th Cir. 2014)). Here, however, Lambert has failed to adduce evidence that demonstrates a genuine issue of material fact on this point. In support of her lack of overtime assertion, Lambert relies on the declaration of her former colleague, police officer Lorenzo Law. *See* Law Decl., Doc. 36. Law states in the declaration that "Plaintiff was denied overtime opportunities and Lt. Bauer routinely offered overtime only to male supervisors." *Id.* ¶ 11. But Law's assertions merely parrot the allegations in Lambert's Amended Complaint without offering factual support that backs up Lambert's claims. *Compare* Law Decl., Doc. 36, ¶ 11, *with* Am. Compl., Doc. 26, ¶¶ 37–39. A declaration that contains no more than conclusory allegations and naked conclusions of law is not enough to create a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

Beyond that declaration, Lambert refers to her own testimony. At her deposition, Lambert testified that there are different ways to acquire overtime. Records reflect that Lambert had 1,058 hours of overtime in 2017 and 2018, though according to Lambert, most of those hours likely occurred during 2018 because she was subject to a nine-month detail suspension in 2017.[2] Lambert Dep., Doc. 33-1, 43:11–25; 44:6–17. In 2019, Lambert had 725

---

[2] Lambert was subject to a nine-month detail suspension following an off-duty incident in 2017. Lambert Dep., Doc. 33-1, 17:19–23. Lambert was disciplined in regard to that incident as a result of convictions for reckless operation, inducing panic, and using weapons while intoxicated. Doc. 41-1, ¶ 5; Doc. 44-1, ¶ 5. The nine-month detail suspension arising from that incident is not at issue here.

hours of overtime. *Id.* at 48:20–21. She testified that Lt. Bauer did not offer her overtime, so all that overtime was awarded through an automated program called "Coplogic." *Id.* at 55:20–24; 35:21–36:6. By comparison, however, Lambert had more overtime over three years, from 2017 to 2019 (approximately 1,783 hours), than other sergeants had in twice that amount of time. In comparison, over six years, from 2017 to 2022, Sgt. White worked just 700 hours and 30 minutes of overtime, *id.* at 55:7–14, and Sgt. Hassert worked 1,169 hours and 20 minutes of overtime, *id.* at 60:1–12. But Lambert asserts that this is a distinction without a difference because the issue is not about how much overtime she *worked*, but how much overtime she was *offered* in comparison to her male peers. She asserts that Lt. Bauer offered overtime to male sergeants, like White, Hassert, Dunaway, Scholl, and Antwine, and did not offer any overtime to her.

That said, Lambert conceded that she does not know how much overtime any of those individuals were receiving from Lt. Bauer—meaning that her assertion arises from nothing more than speculation. Though she says she heard through "word of mouth" that her male peers were being offered overtime and she was not, *id.* at 56:9–21; 63:6–13; 64:17–19; 64:20–66:16, Lambert did not recall her male counterparts saying anything to her about receiving overtime. *See, e.g.*, *id.* at 59:2–8 ("Q. What did he tell you about receiving overtime? A. I don't recall him telling me anything."). Without evidence beyond only her self-serving remarks that support her claim that Lt. Bauer offered her less overtime, thereby affecting compensation, terms, and conditions of employment, Lambert cannot show she suffered an adverse employment action in this regard. *Bradley v. Wal-Mart Stores, E., LP*, 587 F. App'x 863, 866 (6th Cir. 2014) ("A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions.").

Lambert next asserts that Lt. Bauer "refused to utilize overtime to provide [Lambert] with support when staffing was not adequate." Doc. 44, PageID 1372. Here, too, Lambert draws support from Law's declaration. Law states: "When male supervisors were scheduled to work alone, Lt. Bauer offered overtime to other sergeants to provide support and assistance to male supervisors . . . [but] Lt. Bauer never offered additional overtime when Plaintiff was scheduled to work alone." Law Decl., Doc. 36, ¶¶ 9–10. As before, Law's assertions amount to no more than a restatement of the conclusory allegations in Lambert's Amended Complaint. *See* Am. Compl., Doc. 26, ¶¶ 37–38. Lambert's testimony does not help either. Lambert testified that she knows "there were occasions where [her] male counterparts were working alone and [Lt. Bauer] offered overtime to other sergeants to work with them so that they were not working alone." Lambert Dep., Doc. 33-1, 34:12–18. But Lambert also concedes that male and female sergeants worked by themselves. Doc. 41-1, ¶ 16; Doc. 44-1, ¶ 16. And when pressed, Lambert could not identify any evidence that showed Lt. Bauer did not offer overtime to other sergeants, causing Lambert to work alone. For instance:

> Q. You don't know that she didn't offer [overtime]; is that correct? You know that nobody accepted it; is that correct?
>
> A. Well --
>
> Q. You do not know that she didn't offer it?
>
> A. I don't know.
>
> Q. You just know no one accepted it?
>
> A. I know no one accepted it. I know no one accepted something that she didn't offer, but okay.
>
> Q. What evidence do you have that she didn't offer it?

> A. Because officers, the other sergeants would have grabbed overtime any time they could get it when it's easy. It's -- working regular duty is not like out directing traffic, so to speak. It's considered typically an easier overtime.

Lambert Dep., Doc. 33-1, 110:23–111:16. Lambert went on to engage in this related exchange:

> Q. So why do you believe the decision to have you work alone was based solely on gender rather than staffing?
>
> A. Because I worked alone more often than any of my three male counterparts. And on the occasions where she knew I was going to be working alone, I do not believe that she offered overtime to anyone else.
>
> Q. What evidence do you have to support that?
>
> A. That I worked alone?
>
> Q. What evidence do you have to support she didn't send out overtime?
>
> A. Because I worked alone. I believe sergeants would have snatched up the overtime.

*Id.* at 120:1–15. None of this testimony, consisting primarily of Lambert's own beliefs, impressions, and suppositions demonstrates a genuine issue of material fact sufficient to show that Lambert suffered an adverse action in this regard. *See Hartsel v. Keys*, 87 F.3d 795, 801–02 (6th Cir. 1996) (conclusory statements, subjective beliefs, or intuition cannot defeat summary judgment).

Turn then to the next allegation—that Lambert was required to submit a doctor's note when using sick time, "a requirement exclusive to [Lambert] and not the male sergeants assigned to her unit," according to her. Doc. 44, PageID 1373. But this was not a requirement that was truly *exclusive* to Lambert. As Lambert admits, Cincinnati Police Policy and Procedure 19.105 permits a supervisor, like Lt. Bauer, to direct an employee, like Lambert, to produce a physician's statement within three working days to justify an absence when an

employee calls in sick and a supervisor has reason to believe the employee is improperly using sick time. Lambert Dep., Doc. 33-1, 85:20–86:5; Doc. 41-1, ¶ 12; Doc. 44-1, ¶ 12. After Lambert had taken time off, Lt. Bauer told Lambert about this requirement. Lambert Dep., Doc. 33-1, 83:13–21. And Lambert asserts that Lt. Bauer had made comments to other sergeants suggesting that Lambert was lying about being sick and was only trying to increase her vacation time, meaning that Lt. Bauer's request for a doctor's note was made within the parameters of existing policy. *Id.* at 86:14–19. Though Lambert asserts that her male counterparts did not experience the same requirement, she cannot offer any evidence in support of that assertion either, beyond Law's conclusory declaration, which asserts that he "observed Lt. Bauer enforce discipline and rules upon [Lambert] that were not enforced on any of [Lambert's] male counterparts." *Id.* at 88:9–89:11. Additionally, even if Lambert could offer convincing evidence on this score, Lambert has failed to persuade that such action, *i.e.*, requesting a doctor's note, would amount to an adverse action. *Milczak*, 102 F.4th at 786.

Lambert also contends that unilateral changes in her "start time" and assigned "off-days" qualify as adverse employment actions. As to the former, Lambert alleges that Lt. Bauer changed her start time from 5:00 a.m. to 6:00 a.m., and that as a result, Lambert lacked sufficient time to prepare for the timed-arrival of relief officers. Lambert Dep., Doc. 33-1, 123:19–124:3. Though in some cases a schedule change may constitute a materially adverse employment action, *see Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 69 (2006), Lambert has not shown that the change to her start time was materially adverse. On the one hand, the facts do not show that Lambert's schedule changes were more than an issue of convenience. That matters: "To be materially adverse, a change in employment conditions must be more than simply inconvenient." *Kubik v. Cent. Mich. Univ. Bd. of Trs.*, 717 F. App'x 577, 583 (6th Cir.

2017) (citing *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004)); *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (en banc) ("A 'mere inconvenience or an alteration of job responsibilities' . . . is not enough to constitute an adverse employment action." (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)); *cf. Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012) (finding that a denial of an employee's request to modify a work schedule is not "a significant change in employment status," and thus does not qualify as a materially adverse action) (citation omitted). Further, Lambert acknowledges her collective bargaining agreement permitted the City to change her start time by up to two hours on either side of her schedule. Lambert Dep., Doc 33-1, 128:25–129:4. And she conceded Lt. Bauer made the change for all sergeants—male and female. Lambert Dep., Doc. 33-1, 126:6–14. Law contradicted Lambert's testimony in his declaration stating that "[o]nly [Lambert's] start times were changed, while other male supervisors were not subjected to similar changes." Law Decl., Doc. 36, ¶ 12. Lambert has therefore not shown that the change to her start time was a materially adverse employment action.

But what about the change that Lt. Bauer made to her "off-day group"? Lambert alleges that while she was on vacation, Lt. Bauer changed her "off-day group" "to rebalance the relief." Lambert Dep., Doc. 33-1, 97:4–13. Unlike the change to her start time, Lambert has adequately shown that the change to her "off-day group" constitutes a materially adverse employment action because, based on Lambert's assertions that this change to her group "limit[ed] her ability to take off" and also affected her previously-selected off duty detail schedule and vacation, *id.* at 101:9–15, 102:21–103:12, it had an impact on the "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). This was a "permanent change" that was "long-term" and changed her scheduled off-days "for the duration of the

year, at least, or until [her] off day group ever change[d] again." Lambert Dep., Doc. 33-1, 103:1–12. *See*, *e.g.*, *Threat v. City of Cleveland*, 6 F.4th 672, 679 (6th Cir. 2021) (concluding that employer-required shift changes can qualify as materially adverse actions under Title VII).

Lambert next contends that she was subject to lower performance reviews, resulting in yet another adverse employment action. Doc. 44, PageID 1375–76. But Lambert offers no evidence that shows these lower performance reviews were specifically tied to "'a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some other actual and unfavorable change in job status.'" *Milczak*, 102 F.4th at 786 (quoting *Barrett*, 36 F. App'x at 841). This is detrimental to her claim because "[a] negative performance evaluation unaccompanied by a demotion, decrease in pay, or other adverse change in the material terms and conditions of employment is not an adverse employment action." *Harrison v. Proctor & Gamble Distrib., LLC*, 290 F. Supp. 3d 723, 735 (S.D. Ohio 2017) (citing *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999)). At most, Lambert alleges that she received no feedback to warrant her negative reviews, and that she was subject to schedule changes, the sick time doctor's note requirement, and a prohibition on locking her office door. Lambert Dep., Doc. 33-1, 158:19–159:7. Though she separately alleged all but one of those items (the door lock prohibition) to be independent adverse actions, in doing so, she has not tied those alleged adverse actions to lower performance reviews. In fact, the 2019 performance review that Lambert primarily relies on, *see* Doc. 44, PageID 1375–76, is dated November 14, 2019. Doc. 33-22, PageID 1071. This performance review occurred after the off-day group change (May 2019), imposition of the sick time doctor's note requirement (May 2019), and the shift start time change (July 2019), meaning that these cannot be adverse actions arising from the 2019 performance review. Doc. 44,

PageID 1364–66. Lambert does not provide evidence that would permit a reasonable jury to infer that these were consequences of her prior performance reviews, nor convince this Court that the prohibition on locking her office door qualifies as a materially adverse action.

The final adverse action that Lambert asserts relates to discipline that she received. In 2019, Lambert received a written reprimand for three different Cincinnati Police Department rule violations. Am. Compl., Doc. 26, ¶ 45. This resulted in a 60-day suspension from performing details, which Lambert alleges prevented her from earning "significant overtime compensation." *Id.* As background, the City explains that Lambert "received a written reprimand and detail suspension after she was found in violation of Rule 1.31 and 1.01B of the manual of Rules and Regulations and Disciplinary Process." Doc. 41-1, ¶ 22. The violations resulted "from Lambert taking a marked police vehicle to her residence on three occasions, not having her body worn camera ("BWC") powered on for four details, and not logging into Computer Aided Dispatch ("CAD") system for three details." *Id.* Lambert counters that she was improperly reprimanded and that she received "improper discipline for policy violations related to the BWC and CAD systems." Doc. 44-1, ¶ 22 No matter the basis for the discipline, the issue here is whether preventing Lambert from earning "significant overtime compensation" qualifies as an adverse employment action. This is a close call, and one that this Court need not definitively resolve because even if loss of overtime under these circumstances qualifies as an adverse action, Lambert cannot overcome summary judgment for the forthcoming reasons discussed in this decision. *See Baggett v. City of Cincinnati*, No. 1:19-cv-1061, 2022 WL 899675, at *6 (S.D. Ohio Mar. 28, 2022) (collecting cases discussing when allegations of overtime denial constitute an adverse employment action), *aff'd*, No. 22-3338, 2022 WL 17337851 (6th Cir. Nov. 30, 2022).

**b. *Similarly-Situated***

For purposes of a prima facie case, Lambert must next show that she was treated differently than her similarly situated male counterparts. The Court will consider this fourth element in regard to two adverse actions: the "off-day group" change and the discipline that Lambert received, which resulted in a denial of overtime compensation.

Starting first with the "off-day group" change, Lambert asserts that she was treated differently than other similarly situated sergeants, including Sgt. White, Sgt. Hassert, and Sgt. Antwine. To be considered "similarly situated" under the fourth element of the prima facie case, Lambert must show that she is "similar in 'all of the *relevant* aspects'" to any of these comparators. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). Lambert has accomplished that, at least in relation to the "off-day group" change. These sergeants held the same role and title as Lambert, were supervised by Lt. Bauer, and by all accounts, appear to have been subject to the same standards. Important here, the City has not disputed that any of these individuals, all male sergeants and one of whom was a junior sergeant, could have been moved, instead of Lambert, to rebalance the relief. Lambert Dep., Doc. 33-1, 99:25–101:8. Thus, because Lambert, the only female of the group, was moved rather than her similarly situated male counterparts, Lambert survives on this front.

The same cannot be said for her other adverse action related to the discipline that she received. This adverse action amounts to an allegation of differential discipline. Addressing differential discipline, the Sixth Circuit in *Mitchell* explained that there are three factors relevant to the similarly situated inquiry:

> [T]o be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have [1] dealt with the same

> supervisor, [2] have been subject to the same standards and [3] have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

964 F.2d at 583. The Sixth Circuit later clarified in *Ercegovich* the court's earlier pronouncements in *Mitchell*, stating that "[t]he plaintiff need not demonstrate an exact correlation . . . in order for the two to be considered similarly-situated; rather . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the *relevant* aspects." *Ercegovich*, 154 F.3d at 352 (citations omitted) (cleaned up).

Lambert specifically identifies two comparators: Sgt. White and Sgt. Hassert. Lambert Dep., Doc. 33-1, 139:21–24 ("I [reviewed] enough to find an example where there was a violation that [Lt. Bauer] didn't enforce on Sergeant White, Sergeant Hassert, definitely those two for sure."). Like Lambert, these individuals were both supervised by Lt. Bauer and appear to have been subject to the same standards. The issue, however, is the absence of evidence, beyond Lambert's testimony, that shows Sgt. White and Sgt. Hassert in fact engaged in similar conduct and received more favorable treatment. Lambert testified that she personally reviewed documents and found similar violations that Sgt. White and Sgt. Hassert committed that Lt. Bauer did not enforce. *Id.* at 138:7–11. But Lambert has not offered those documents as evidence in opposition to the City's summary judgment motion and there is no evidence before the Court showing that these individuals engaged in that behavior, so the Court is left with only Lambert's speculatory testimony to the same. *See Jones v. City of Franklin*, 468 F. App'x 557, 562 (6th Cir. 2012) ("[B]are-bones allegations and conclusory statements are a far cry from the specificity that the fourth element requires."); *Bell v. Ohio State Univ.*, 351 F.3d 240, 252–54 (6th Cir. 2003) (affirming summary judgment to university on a § 1981 claim despite the plaintiff's deposition testimony that that she had a relevant comparator). Without

evidence that shows these individuals engaged in conduct similar to hers, the Court cannot find that Sgt. White and Sgt. Hassert are similarly situated to Lambert. *See Robinson v. Quicken Loans, LLC*, No. 21-1392, 2022 WL 4234072, at *6 (6th Cir. Sept. 14, 2022) (finding that the plaintiff did not satisfy the similarly situated element where the plaintiff failed to identify a comparator accused of the same misdeeds). Beyond that, Lambert also testified that she did not believe Lt. Bauer had audited *anybody* else, which suggests that Lt. Bauer's actions were premised on personal animosity, rather than gender. *Id.* at 144:7–8 ("[S]he never audited anybody but me.").[3] Thus, with respect to the discipline that she received, Lambert has not shown that she was treated less favorably than any similarly situated male counterparts. So moving forward, the Court will review Lambert's claims in light of the "off-day group" change only.

### 2. Legitimate Non-Discriminatory Reason

Under the second prong of the burden-shifting framework, this Court must evaluate the City's nondiscriminatory reasons for the adverse employment actions. "This is merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (citing *Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2 (1978) (explaining the employer satisfies its burden if it explains its actions or produces evidence of legitimate nondiscriminatory reasons)).

---

[3] Even if the Court were to assume that Lambert could show she was treated differently than similarly situated male employees in regard to how she was disciplined, Lambert still cannot prevail because she has failed to show pretext. After Lt. Bauer recommended a 60 to 90-day detail suspension, the recommendation went up the chain of command for review. Lambert Dep., Doc., 33-1, 130:19–21. Three other individuals, each reviewing after the other, agreed with the recommendation. *Id.* at 131:13–16; 132:2–8, 9–16. The recommendation was sustained by the peer review board, after Lambert had an opportunity to offer information to the panel regarding self-perceived shortcomings related to the charges and the discipline. *Id.* at 137:9–12. No reasonable jury could find that the discipline doled out by Lt. Bauer was pretext for unlawful gender discrimination when three individuals, and a peer review board, agreed or sustained Lt. Bauer's decision, after reviewing the reprimand and recommendation for a detail suspension.

Here, the City offers a legitimate non-discriminatory reason for the adverse action. As to the off-day change, the City explains Lambert's off-day group was changed to rebalance the relief. Doc. 41, PageID 1349. And Lambert testified that Lt. Bauer told her the change was "to rebalance the relief." Lambert Dep., Doc. 33-1, 97:11–13. The City has therefore provided a legitimate, non-discriminatory reason for the off-day change that is sufficient to shift the burden "back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (citing *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007)).

**3. Pretext**

There are three ways for Lambert to demonstrate that the City's proffered reason is pretext for unlawful gender discrimination: "1) by showing that the reason has no basis in fact; 2) by showing that the reason did not actually motivate the employer's action; or 3) by showing that the reason was insufficient to motivate the action." *Macy*, 484 F.3d at 366 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Lambert alleges that even though she was "the senior supervisor in the unit, and the only female," Lt. Bauer rebalanced the work groups in a manner that only affected her.[4] Doc. 44, PageID 1377. She believes the change to her off-day group was pretext because Lt. Bauer moved her instead of

---

[4] Lambert also asserts that she was retaliated against for using her sick time. Doc. 44, PageID 1373. Though she makes this assertion in relation to her gender discrimination claims, this does not appear to have any bearing on her claim that she was discriminated on this basis of gender. To be sure, Lambert has not asserted a separate retaliation claim. To advance such a claim, Lambert would need to first establish a prima facie case of retaliation by showing that (1) she engaged in a protected activity, (2) the protected activity was known to the City, (3) the City took adverse employment action against Lambert, and (4) there is a sufficient causal connection between the protected activity and the adverse action. *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004). And there is no indication from the record that Lambert alleges she engaged in protected activity under either the "opposition clause" or the "participation clause" under Title VII. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012); 42 U.S.C. § 2000e-3(a).

"any of the three male sergeants." Lambert Dep., Doc. 33-1, 99:25–100:8. For example, according to Lambert, Lt. Bauer could have moved a junior sergeant, Brad White. *Id.*

Here, Lambert does not dispute that a rebalance was necessary. She acknowledged that Sgt. Scholl was transferred in April 2019, meaning that his group was open and one sergeant needed moved to a different group. Lambert Dep., Doc. 33-1, 100:24–25; 102:7–10. Thus, based on her assertions, Lambert seems to argue that the reason for the action (*i.e.*, rebalancing the relief) did not actually motivate Lt. Bauer to change *her* off-day group, and that Lt. Bauer was instead motivated on the basis of Lambert's gender. *Parkhurst v. Am. Healthways Servs., LLC*, 700 F. App'x 445, 449 (6th Cir. 2017) ("When a plaintiff argues a did-not-actually-motivate theory of pretext . . . she admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal[.]") (citation and quotations omitted). To show the City's proffered reason did not actually motivate the change, Lambert can "attack[] the [City's] explanation by showing circumstances which tend to prove an illegal motivation was more likely than that offered by the [City]." *Hartman v. Dow Chem. Co.*, 657 F. App'x 448, 453 (6th Cir. 2016) (emphasis in original and internal quotation marks omitted) (quoting *Smith*, 220 F.3d at 759). Lambert has not done so. When pressed at her deposition about why she was singled-out for the off-day group change, Lambert elaborated that Lt. Bauer was trying to limit her from taking time off, rather than a male sergeant. But the reason for that, Lambert explained, was that she had more leave time saved than anybody in the entire district. *Id.* at 101:22–102:1. The fact that Lambert had more leave time saved than anybody in the district does not show that the change to Lambert's off-day group was unlawfully motivated by gender; instead, it suggests that the change was tied to the fact that she had amassed more leave than anyone else. *Id.* at 104:2–4

("[Lt. Bauer] knew that I had more time than anybody in the entire district saved up and this would limit my ability to take time off.").

Beyond that, the only other evidence in the record is Law's declaration. But as has been reiterated time and again, Law's declaration, containing only conclusory assertions, is insufficient to create a genuine dispute of material fact. *See, e.g.*, Law Decl., Doc. 36, ¶ 7 ("Lt. Bauer changed [Lambert's] 'off days' without notice while [Lambert] was on vacation. The 'off days' of male supervisors were never changed."). Without more than a conclusory affidavit and generalized assertions, Lambert cannot prevail in regard to the off-day group change because she has failed to show the City's proffered reason was pretext for unlawful discrimination. Accordingly, the City is entitled to summary judgment on Counts 1 and 2.

**B. Equal Protection**

In Count 3, Lambert asserts an equal protection claim under 42 U.S.C. § 1983. The Equal Protection Clause of the Fourteenth Amendment directs that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Generally, "[t]o state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citations and quotation omitted). As is relevant here "the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section § 1983." *Smith*, 378 F.3d at 577 (quoting *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988) (collecting cases)). Because

Lambert has failed to show gender discrimination under Title VII and Ohio law in Counts 1 and 2, Count 3 must fail.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** the City of Cincinnati's Motion for Summary Judgment (Doc. 41) and **DISMISSES** Lambert's Amended Complaint (Doc. 26) **WITH PREJUDICE**. The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**IT IS SO ORDERED.**

August 21, 2026

Jeffery P. Hopkins
United States District Judge